**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
TONY CLANTON,

                                Petitioner,                    **REPORT AND**
                                                                **RECOMMENDATION**
                - against -
                                                                09-CV-5509 (KAM) (JO)
UNITED STATES OF AMERICA,

                                Respondent.
--------------------------------------------------------X
**JAMES ORENSTEIN, Magistrate Judge:**

        Petitioner Tony Clanton ("Clanton") is currently incarcerated pursuant to a criminal

conviction in the State of New York. Clanton has also been sentenced in this court to an 18-month

term of imprisonment, consecutive to the prison term he is now serving, for a violation of the

conditions of his supervised release ("VOSR") on an earlier federal conviction. Pursuant to 28

U.S.C. § 2255, Clanton seeks an order vacating the VOSR sentence and granting him a hearing on

the underlying VOSR offense; in addition, he seeks prospectively to require the federal Bureau of

Prisons ("BOP") to credit the time he previously served in state custody against his federal VOSR

sentence. Docket Entry ("DE") 1 (Motion). Upon a referral from the Honorable Kiyo A.

Matsumoto, United States District Judge, I now make this report and, for the reasons set forth

below, respectfully recommend that the court deny Clanton's motion in its entirety.

I.      Background

        On May 19, 2006, while Clanton was on federal supervised release for an earlier offense,

*see generally Clanton v. United States*, 284 F.3d 420 (2d Cir. 2002) (affirming the denial of a

collateral challenge to Clanton's original conviction), officers of the New York City Police

Department ("NYPD") arrested Clanton in connection with a robbery that had taken place in

Brooklyn, New York a few days earlier. *See* DE 18 (Government's Response in Opposition)

("Opp.") at 3. As a result of that arrest, this court's Probation Department issued a report accusing Clanton of violating the conditions of his supervised release. *Id.*

On February 13, 2007, while the latter accusation was pending in this court, Clanton was again arrested, this time by NYPD officers working together with agents of the federal Drug Enforcement Administration ("DEA"), who found weapons, a controlled substance, and other items in Clanton's apartment. Opp. at 4. Based on this latest arrest, the Probation Department filed an Addendum to its earlier report accusing Clanton of a further VOSR by committing new crimes. DE 18-2 (the "VOSR Addendum").

At a hearing before the court on July 11, 2008, the parties reported that in the underlying state court prosecution arising from the 2007 arrest, Clanton had pleaded guilty and been convicted of two offenses: Criminal Possession of a Controlled Substance in the Third Degree and Criminal Possession of a Weapon in the Second Degree. The parties further stipulated that Clanton's state court conviction provided a basis for this court to find by a preponderance of the evidence that Clanton had committed a VOSR, and also agreed to have this court dismiss the VOSR charges arising from the 2006 arrest. DE 18-3 (Transcript of Hearing) ("Tr.") at 2-3. The court confirmed at the hearing that Clanton understood that if he did not stipulate to the proposed finding, he would be entitled to a hearing on the VOSR charges. *Id.* at 4-5. After some discussion on the record as to whether Clanton wanted a hearing, there was a break in the proceedings during which Clanton spoke off the record with his appointed counsel, Jeremy Gutman ("Gutman"). When the hearing resumed, Clanton declined to demand a hearing and stated that he was prepared to proceed to sentencing. *Id.* at 27. The court then sentenced Clanton to 18 months in prison, to be served consecutively to his state sentence. *Id.* at 30.

Clanton filed a notice of appeal on August 18, 2008. *See United States v. Clanton*, docket no. 97-CR-0776, DE 112. The following month, Marshall Mintz ("Mintz") was appointed as Clanton's appellate attorney. DE 9 (Declaration of Marshall Mintz) ("Mintz Dec.") ¶ 6. On April 15, 2009, Mintz filed a motion to be relieved as counsel pursuant to *Anders v. California*, 386 U.S. 728 (1967). *Id.* ¶ 7. Mintz noted that Clanton "had admitted the violation of supervised release, waived his right to a hearing on the violation, and received a sentence reasonable in both procedure and substance[,]" and that as a result there was no non-frivolous claim for appellate relief that he could make. *Id.* On April 17, 2009, the government filed a motion for summary affirmance of Clanton's sentence. *Id.* On June 30, 2009, the appellate court granted both the government's motion for summary affirmance and Mintz's motion to be relieved. Opp. at 7; Mintz Dec. ¶ 8.

Clanton filed the instant motion on December 9, 2009. He contends that both Gutman and Mintz were ineffective as his counsel and that the court's failure to conduct a hearing on the VOSR charges deprived him of his right to due process, and that in any event the time he spent in custody in 2005 and 2006 should be credited against his VOSR sentence. Motion at 5-8. Clanton therefore asks the court to vacate his sentence, grant him a hearing on the VOSR and appoint a "competent attorney" to represent him at such a hearing, and, in the event that he must serve a sentence on the VOSR, to order that the time he spent in custody in 2005 and 2006 be credited against that sentence. *Id.* at 13. On May 9, 2011, Clanton requested a hearing on the instant motion. DE 21.

II.     Discussion

A.      Ineffective Assistance of Counsel

Clanton argues that Gutman had a conflict of interest and improperly failed to request a hearing on the VOSR charges despite the fact that Clanton told him that he wanted one. Motion at

5-6. He also claims that appellate counsel Mintz was ineffective for two reasons: first, because he failed to seek appellate relief on the basis of Gutman's ineffectiveness, and second because he failed to notify the circuit court that Clanton intended to submit a *pro se* motion. *Id*. at 7-8.

To succeed on his claims of ineffective assistance of counsel, Clanton must establish both deficient performance and prejudice. Specifically, Clanton must show first that the relevant attorney's performance "fell below an objective standard of reasonableness … under prevailing professional norms[,]" and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Where the court is satisfied that a petitioner cannot satisfy the latter requirement, it need not consider whether the attorney's performance was deficient: "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

      1.    <u>Prejudice</u>

Clanton cannot demonstrate that he has been prejudiced by the allegedly defective performance of either of his attorneys. Indeed, he does not even attempt to explain how, had his attorneys performed as he believes they should have, the outcome of the VOSR prosecution or appeal would have changed. To the contrary, had Gutman requested a hearing on Clanton's behalf, the record suggests the outcome may well have been a more severe sentence.

First, had Clanton withdrawn his stipulation to the entry of a VOSR finding and demanded a hearing, there can be no doubt that the court would nevertheless have found him to have violated the conditions of his supervised release. The government appears to have been prepared to adduce

overwhelming evidence in support of the charges, including the testimony of the DEA agents involved in his 2007 arrest and possibly evidence of Clanton's possession of false DEA credentials bearing Clanton's picture. *See* Tr. at 25, 27. Moreover, during the proceeding at which Clanton waived his right to a hearing, Clanton explicitly admitted possession "90 something grams" of narcotics. Tr. at 21-22. Even discounting such evidence however, the court could manifestly base a finding that Clanton had committed crimes in violation of the conditions of his supervised release on the fact that Clanton had admitted his guilt to two offenses during his state court guilty plea.

Second, asking for a hearing would not have resulted in a more favorable sentence. In imposing sentence for the VOSR, the court rejected the Probation Department's recommendation of a 24-month sentence, *see* VOSR Addendum at 6, and instead imposed what it characterized as a "lenient" sentence of 18 months – a sentence at the low end of the guidelines range. Tr. at 29; *see also* U.S.S.G. § 7B1.4(a) (prescribing a range of 18 to 24 months for grade "A" violation and criminal history category III); VOSR Addendum at 6 (same). And while there is of course no reason to believe that the court would have imposed a more severe sentence as a punishment for a decision by Clanton to exercise his right to hearing, the possibility of a less favorable outcome for Clanton cannot be excluded: the government explicitly stated that if put to its proof at a hearing, it would "ask for the maximum sentence." *Id.* at 24. Accordingly, because Gutman would not have secured a better outcome for his client by requesting a hearing, Clanton cannot establish that he was deprived of his right to the effective assistance of counsel in the district court.

Nor has Clanton shown any prejudice at the appellate level. Even if appellate counsel Mintz – or Clanton in a *pro se* brief – had argued that Gutman was ineffective, the outcome of the appeal would have been unchanged because the ineffectiveness claim lacked merit for the reasons

set forth above. Clanton having admitted the facts that compelled a finding that he committed a

VOSR, and having then been given a lenient sentence, he would not have had any viable claim for

appellate relief. I therefore conclude that Clanton cannot establish prejudice with respect to either

prong of his ineffective assistance claim.

2.    <u>Deficient Performance</u>

If the court agrees that Clanton cannot satisfy the prejudice prong of the *Strickland* test, it

need not address the performance prong. In the event the court disagrees with the preceding

analysis, I briefly address the latter issue and conclude that there is no reason to find that either

Gutman or Mintz provided deficient representation.

Clanton appears to assert that Gutman labored under a conflict of interest because Clanton

had previously challenged his original conviction by claiming that Gutman had been ineffective.

*See* Motion at 5-6; *Clanton*, 284 F.3d at 422. Even if the court credits Clanton's characterization of

the facts (some of which Gutman contests, *see* DE 12 (Affirmation)), a client's dissatisfaction with

his counsel's *prior* representation does not create an actual or even a potential conflict of interest

with respect to the current representation.

> Actual conflicts occur when the interests of a defendant and his attorney diverge
> with respect to a material factual or legal issue or to a course of action…. Potential
> conflicts exist if the interests of the defendant may place the attorney under
> inconsistent duties at some time in the future….

*Ventry v. United States*, 539 F.3d 102, 111 (2d Cir. 2008) (quotation marks, alterations, and

citations omitted). Even if Gutman knew that Clanton had previously complained of his earlier

representation, that would not have given Gutman any interest that diverged from Clanton's in the

VOSR proceeding, nor would it have raised the prospect of inconsistent duties in the future.

Second, Clanton cannot demonstrate that Gutman was deficient with respect to the waiver

of a hearing. To the extent Clanton contends that Gutman simply overrode his wish to have a hearing, the record contradicts him: Clanton expressed his understanding of a right not to stipulate to the VOSR finding and demand a hearing, and Gutman – with Clanton standing by and listening – did no more than report his client's decision to accept his advice and waive a hearing. Tr. at 4-5, 27. To the extent Clanton seeks only to criticize the quality of Gutman's advice in that regard, his claim cannot succeed. Not only was the advice manifestly sound in light of Clanton's state court guilty plea, but it is the kind of strategic decision that is essentially immune from challenge in this setting. *See Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). I therefore conclude that Clanton has not shown that Gutman's performance was deficient.

Clanton asserts that Mintz's performance was deficient in two respects: failing to argue that Gutman was ineffective, and neglecting to inform the court that Clanton would in any event do so on his own. Motion at 7-8. Because, for the reasons set forth above, I conclude that Gutman did not render ineffective assistance, I necessarily also conclude that Mintz's decision not to raise such a claim on appeal was reasonable. Nor did Mintz have any obligation to alert the circuit court to his client's desire to file a *pro se* appellate brief.[1]

B.      Denial of Due Process

Clanton's claim that he was denied due process "when I told my attorney I wanted to have a hearing and they denied that right." Motion at 6. This claim is directly contradicted by the record:

---

[1]  In any event, the record reflects that Mintz repeatedly told Clanton that he could file a *pro se* brief if he wished to take responsibility for doing so. Mintz Dec. ¶¶ 16-18. Moreover, Mintz asserts that "[a]t no point after [he] filed the *Anders* brief did Mr. Clanton indicate to [him] that he actually intended to file a *pro se* submission. Rather, he was always equivocal about how he would proceed." *Id.* ¶ 19.

7

Clanton declined to ask for a hearing after being informed of his right to have one and after discussing the matter with counsel.

C.    <u>Credit For Time Previously Served</u>

Clanton also requests sentence credit for time he claims he spent in state custody between March 4, 2005, and January 26, 2006. Motion at 9. He argues that he is entitled under federal law to receive credit toward his term of imprisonment for such time spent in "official detention." *Id.*; DE 19 (Reply) at 2 (citing 18 U.S.C. § 3585). The government acknowledges that Clanton has made such an argument, *see* Opp. at 2 & 8, but has not troubled itself to respond to it. Although that inexplicable lapse might well warrant granting this portion of Clanton's motion as unopposed, I nevertheless respectfully recommend that the court deny such relief without prejudice to any later objection he may have to the BOP's actual calculation of a release date.

Whatever the merits of Clanton's view about the extent to which the time he has previously served in custody should be credited toward the execution of the VOSR sentence, the law is clear that the Attorney General, through the BOP, is solely responsible for making such a determination in the first instance. *United States v. Keller*, 58 F.3d 884, 894 (2d Cir. 1995) (citing *United States v. Wilson*, 503 U.S. 329 (1992)). The BOP has not yet had occasion to make such a determination in this case, and will not do so until it receives Clanton into its custody for the execution of the VOSR sentence and designates the facility in which he shall be confined. *See generally* U.S. Dept. of Justice, Federal Bureau of Prisons Program Statements 5880.28 and 5100.08. Any concern about how the BOP should make that determination is therefore not yet ripe for judicial review; indeed, even after the BOP does calculate a release date, judicial review of any complaint Clanton may have about that calculation will remain premature until he exhausts the administrative remedies

available to him. *See Wilson,* 503 U.S. at 335; *Guzman-Mogrovejo v. United States*, 2010 WL 3747885 (E.D.N.Y. Sept. 17, 2010) (citing *Martinez v. United States*, 19 F.3d 97 (2d Cir. 1994)).

      D.      <u>The Request For A Hearing</u>

Finally, Clanton requests a hearing on the instant motion. DE 21. No such hearing is necessary where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *see Muniz v. United States*, 360 F. Supp. 2d 574, 582 (S.D.N.Y. 2005). To be sure, with respect to his primary claim, Clanton need only show that he has a "'plausible' claim of ineffectiveness assistance of counsel, not that he will necessarily succeed on the claim" in order to secure a hearing. *Raysor v. United States*, --- F.3d ----, 2011 WL 3134459, at *2 (2d Cir. Jul. 27, 2011) (citing *Puglisi v. United States*, 586 F.2d 209, 213 (2d Cir. 2009)). For the reasons stated above, however, I conclude that Clanton has made no such showing, and that the record clearly establishes that Clanton is not entitled to any relief. I therefore respectfully recommend that the court deny his request for a hearing. *Muniz*, 360 F. Supp. 2d at 582 (citing *Chang v. United States*, 250 F. 3d 79, 85-86 (2d Cir. 2001)).

III.     <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the court deny in its entirety petitioner Tony Clanton's motion to vacate, set aside, or correct his sentence.

IV.     <u>Objections</u>

I direct the government to serve a copy of this Report and Recommendation on the petitioner by certified mail, and to file proof of service no later than August 4, 2011. Any objections to this Report and Recommendation must be filed on the electronic docket no later than August 18, 2011. Failure to file objections within this period designating the particular issues to be

reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R.

Governing Section 2255 Cases in the United States District Courts 8(b); *Wagner & Wagner, LLP*

*v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

    **SO ORDERED.**

Dated: Brooklyn, New York
      August 1, 2011

                                    /s/ James Orenstein
                                    JAMES ORENSTEIN
                                    U.S. Magistrate Judge